UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | |
| | : | Case No.  14-CR-200 (RMC) |
| | : | |
| **OMAR J. GONZALEZ,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum to aid the Court in sentencing the defendant.  The sentencing hearing in this matter is scheduled for June 8, 2015.  The defendant has been held without bond in this matter since September 22, 2014.

## I.     Introduction

As noted in more detail below, on September 19, 2014, the defendant, armed with a knife, jumped the White House fence, ignored commands to stop from security personnel while he ran across the White House lawn, pushed past a Secret Service officer who was guarding an entrance to the White House mansion, and ran to the mansion's East Room, where he was apprehended.  A search of the defendant's vehicle, which he had parked nearby, revealed hundreds of rounds of ammunition, throwing tomahawks, a machete, as well as other knives and weapons accessories.

In a superseding indictment filed on October 16, 2014, the defendant was charged in Count 1 with Entering or Remaining in a Restricted Building or Grounds While Carrying a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); in Count 2 with Carrying a

Dangerous Weapon Outside Home or Place of Business, in violation of 22 D.C. Code § 4504(a)(1); in Count 3 with Unlawful Possession of Ammunition, in violation of 7 D.C. Code § 2506.01(a); in Counts 4 and 5 with Assaulting, Resisting, Or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a); and in Count 6 with Unlawful Possession of a Large Capacity Ammunition Feeding Device, in violation of 7 D.C. Code § 2506.01(b).

On March 13, 2015, the defendant pleaded guilty to Counts 1 and 4 of the superseding indictment. In exchange, the government agreed to dismiss the remaining counts of the superseding indictment at the sentencing hearing.

## II.     Nature and Circumstance of the Offenses and the History and Characteristics of the Defendant

    a. Nature and circumstance of the offenses.

At about 6:00 p.m. on September 19, 2014, the defendant parked his Ford Bronco on Raul Wallenberg Street in the area of 15th Street and Independence Avenue, N.W., Washington, D.C. The defendant left his vehicle, walked his dogs, and then went towards the White House, located at 1600 Pennsylvania Avenue, N.W., Washington, D.C. The defendant walked around the entire perimeter of the White House and then stopped near the White House's north fence line.

At about 7:19 p.m., the defendant ran east along the north fence line, stopping at a section of the fence located about 20 yards away from the Northwest Gate of the White House. There, the defendant placed a foot on the sidewalk and his other foot on the fence's cement footer, and placed his hands on fence posts. The defendant then began to climb the fence.

While the defendant was climbing the fence, Secret Service officers assigned to the Uniformed Division ran towards him and repeatedly yelled at him to stop and get down; the defendant heard these commands. However, the defendant ignored the commands and climbed over the fence, landing on the north grounds of the White House.

After alighting on the north grounds, the defendant immediately ran southward, across the grounds and into bushes located outside the North Portico of the White House and adjacent to the White House driveway. The defendant then emerged from the bushes and ran around a black sport utility vehicle and towards the North Portico doors of the White House. A Uniformed Division officer commanded the defendant to get down, but the defendant did not comply. As he was running towards the door, the defendant looked to his left and saw another officer with an M-4 rifle.

The defendant climbed the steps of the North Portico and arrived at the North Portico doors. As the defendant approached the doors, he saw a female officer inside trying to close them. The defendant then hit one of the doors with his right shoulder.

At that time, Uniformed Division Officer Philicia Brice was on duty at a post located inside the White House Mansion and adjacent to the North Portico doors. After looking out a window and seeing a Uniform Division officer with his gun drawn, Officer Brice attempted to secure the North Portico doors. While she was doing so, the defendant yelled "let me in" and pushed through the North Portico doors, knocking Officer Brice backwards.

The defendant then entered the White House Mansion and proceeded past a set of stairs leading to the residence of the First Family. Officer Brice commanded the defendant to stop, but the defendant moved past her and turned left down a hall and towards the East Room. In the East Room, Officer Brice unsuccessfully attempted to subdue the defendant. Another Uniform Division officer arrived and tackled the defendant. Soon thereafter, United States Secret Service Special Agents arrived and assisted in the struggle until the defendant was subdued and placed in handcuffs.

Soon after the defendant was taken into custody, a Secret Service Special Agent asked the defendant if he had any items in his pockets. The defendant responded that he had a knife. The Special Agent searched the defendant incident to his arrest and removed a folding knife with a serrated blade that was over three-and-a-half inches long from the defendant's right front pants pocket.

Later that night, after waiving his Miranda rights, the defendant told a Secret Service Special Agent that the defendant wanted to tell the President that the atmosphere was collapsing.

b. History and characteristics of the defendant.

The defendant's history and characteristics are summarized on pages 11-17 of the draft presentence investigation report ("draft PSR"), and also on pages 2-7 of the November 19, 2014 forensic report provided to the Court ("forensic report"). The defendant has a history of encounters with law enforcement where he has described paranoid delusions and has brandished or been in possession of multiple firearms and other weapons, sometimes creating dangerous situations. Indeed, the defendant himself admitted that he has a history of auditory and visual hallucinations, as is reflected in the findings of the forensic report (forensic report at pages 6, 9). Examples of outbreaks of this behavior include:

- On February 17, 2013, in the area of the defendant's former residence in Copperas Cove, Texas, the police responded to a telephone call from the defendant to report a possible burglary. When the police responded to the call, they observed the defendant patrolling his front yard while armed with an assault rifle, two handguns, several handgun clips, and a knife. When the police spoke with the defendant about the burglary report, he said that he was secretly being listened to, that cameras had been placed in his residence, and that he had additional weapons in his residence.

- On August 25, 2014, the defendant was approached by Secret Service officers after he was stopped along the south fence line of the White House. At the time, the defendant had a hatchet tucked into the rear waistband of his pants. (The defendant claimed that the hatchet was for camping and agreed to secure the hatchet in his vehicle, and he was not arrested.)

- In July 2014, after the defendant was arrested in Virginia, he claimed that he had failed to stop for the police because he had suffered a "flashback" during which he had a hallucination, prompted by the police car's lights and sirens, that he was experiencing an "Iraqi moment." A search of the defendant's vehicle revealed an illegal sawed-off pump shotgun, four high-powered rifles, another pump shotgun, several handguns, and other weapons (See Tab 1 [photographs of weapons recovered in connection with Virginia arrest]). The search also revealed a map of Washington D.C., with several places, including the White House, highlighted. The defendant claimed that a friend had given him the map, that the highlighted areas were recommendations of places he should visit, and that he had no intention of going to the White House. On May 28, 2015, the defendant pleaded guilty in connection with this arrest to the felonies of Eluding Police

4

- (2006 Code of Virginia § 46.2-817) and Possession of a Sawed-Off Shotgun or Rifle (2006 Code of Virginia § 18.2.300).  The defendant was sentenced to 15 years of imprisonment, all of which was suspended, and 10 years of supervised probation.

- In this case, the defendant claimed that his reason for entering the White House mansion was to tell the President that the atmosphere was collapsing.  As the Court is aware, the defendant entered the White House while armed with a knife that had a sharp, serrated blade (See Tab 2 [photographs of knife]).  A search of the defendant's vehicle, parked nearby, revealed a huge amount of ammunition and additional weapons, including a machete and corresponding sheath, both marked "Carnivore," several tomahawks that were designed to be thrown, and numerous other knives and accessories for guns and knives (See Tab 3 [photographs of weapons and ammunition recovered from vehicle]; Tab 4 [photographs of machete and tomahawks]).

The defendant claims that he was previously diagnosed with post-traumatic stress disorder ("PTSD").  The government does not dispute that the defendant suffers from PTSD.  And, of course, the government acknowledges that PTSD is a serious concern, especially for veterans returning from overseas war zones.  However, the defendant has not demonstrated that he can be trusted to obtain regular, ongoing treatment for his PTSD, paranoia, and hallucinations.  To the contrary, the draft PSR notes that the defendant met with a psychiatrist in Texas between 2008 and 2010 (draft PS at page 15, para. 70), but does not indicate that the defendant continued to seek treatment after 2010.  Additionally, the forensic report noted that the defendant "provided an inconsistent timeline of mental health history and was unclear about dates of treatment" (forensic report at page 4).

The defendant's spotty track record for obtaining treatment for his mental health issues is especially disconcerting given the forensic report's finding that "[w]ithout treatment, it is likely [the defendant] will continue to experience mental health symptoms" (forensic report at page 9).  Given the above examples, it follows that, without treatment, the defendant's expected mental health problems will involve guns and other weapons, and possible altercations with law

enforcement – with potentially calamitous consequences for law enforcement officers, the defendant, and innocent civilians.

### III    Guidelines Calculation and Sentencing Recommendation

a.  Guidelines Calculation

With respect to Count 1, under United States Sentencing Guidelines (U.S.S.G.) § 2B2.3(a), the defendant's Base Offense Level is 4.  Under U.S.S.G. § 2B2.3(b), the defendant's Specific Offense Characteristics include, under subsection (1)(B), the fact that the trespass occurred at the White House or its grounds, which adds 4 levels, and, under subsection (2), the fact that a dangerous weapon was possessed, which adds 2 additional levels, for a total Base Offense Level of 10.

With respect to Count 4, under U.S.S.G. § 2A2.4(a), the defendant's Base Offense Level is 10.  Under U.S.S.G. § 2A2.4(b), the defendant's Specific Offense Characteristics include, under subsection (1)(A), that the offense involved physical contact, which adds 3 levels, for a total Base Offense Level of 13.  Under U.S.S.G. § 3D1.4, the defendant has a Combined Offense Level of 15.

In addition, the defendant is entitled to a 2-level reduction pursuant to U.S.S.G. § 3E1.1, since the defendant clearly demonstrated acceptance of responsibility, to the satisfaction of the Government, through the defendant's allocution, adherence to the provisions of the written plea agreement, and conduct between the entry of the plea and the imposition of the sentence.  Accordingly, the applicable Guidelines Offense Level is 13.

Based upon the defendant's recent felony guilty plea and sentence in Virginia, detailed above, the defendant has one criminal conviction.  Accordingly, the defendant has 3 criminal history points and the defendant's Criminal History Category is II.

Based upon the total offense level and the estimated criminal history category set forth above, the defendant's Sentencing Guidelines range is **15 months to 21 months of imprisonment.**

b.  Sentencing Recommendation

The government recommends that the defendant be sentenced to 21 months in prison and three years of supervised release. The government believes that a sentence of imprisonment at the top of the Guidelines Range would account for the gravity of the defendant's crime. The defendant's actions needlessly endangered White House occupants, Secret Service officers, and civilians in the vicinity of the crime. Moreover, the defendant was aware for years before the crime that he needed treatment to address his PTSD, paranoia, and hallucinations, but did not make sufficient efforts to consistently obtain that treatment. Relatedly, a maximum period of supervised release will ensure that, for the period of supervision, the defendant is monitored to confirm that he obtains the treatment he needs to avoid being danger to himself and others.

WHEREFORE, the government recommends that the Court sentence the defendant to a period of imprisonment of 21 months, and a period of supervised release of three years.

Respectfully submitted,

VINCENT H. COHEN, JR.
ACTING UNITED STATES ATTORNEY

_____/s/_____
David J. Mudd
Assistant United States Attorney
D.C. Bar Number 995154
National Security Section
United States Attorney's Office
555 Fourth Street, N.W., 11th Floor
Washington, DC 20530
(202) 252-7785
david.mudd2@usdoj.gov

_____/s/_____
Thomas A. Gillice

        Assistant United States Attorney
        D.C. Bar No. 452336
        National Security Section
        United States Attorney's Office
        555 Fourth Street, N.W., 11th Floor
        Washington, DC 20530
        (202) 252-1791
        thomas.gillice@usdoj.gov